UNITED STATES DISTRICT COURT
WESTERN DIVISION OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| RICO PATRICK ZACHARY | CIVIL ACTION NO. 6:15-cv-02421 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| SUPERIOR ENERGY SERVICES AND SHELL OIL COMPANY | BY CONSENT OF THE PARTIES |

## **MEMORANDUM RULING**

Currently pending is the motion for summary judgment filed by defendants Shell Offshore, Inc. and Shell Oil Company. (Rec. Doc. 46).[1] The motion is unopposed. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, this Court grants the motion and dismisses the plaintiff's claims against Shell Offshore, Inc. and Shell Oil Company with prejudice.

## **Background**

The plaintiff, Rico Patrick Zachary, claims that he was injured due to an incident that occurred on September 25, 2014 while he was working as a derrick hand for Weatherford International, Inc. on a fixed platform located at Ship Shoal

---

[1] Shell Offshore Inc. answered the lawsuit, contending that Shell Oil Company was erroneously named as a defendant in the lawsuit and that Shell Offshore Inc. was the proper defendant. (Rec. Doc. 4 at 1). Still, the instant motion for summary judgment was filed on behalf of both Shell Offshore, Inc. and Shell Oil Company.

241 in the Gulf of Mexico off the coast of Louisiana. He alleged that the two Shell entities (collectively referred to as "Shell" hereinafter) owned the platform.

The following uncontested facts were established by Shell. Shell and Weatherford entered into a Global Well Services Arrangement ("GWSA") that governs the way in which Weatherford was to perform certain oilfield services for Shell. The GWSA states that Weatherford is an independent contractor, that Shell has the right to inform Weatherford of the results to be obtained through Weatherford's efforts, but that Weatherford retains "complete control, supervision[,] and direction of the method and manner of obtaining such results." (Rec. Doc. 47-1 at 10 – Paragraph 28.5 of the agreement).

On August 30, 2013, pursuant to the GWSA, Shell and Weatherford entered into a contract by which Weatherford's Pulling and Jacking Unit 4 was to be delivered to Shell's platform at Ship Shoal 241. Under the contract, Weatherford was also obligated to provide a crew to perform services on Shell's platform using the pulling unit. Weatherford's pulling unit was temporarily located on Shell's platform between August 2013 and October 2014. The pulling unit could be, and actually was, removed from the platform without substantial damage to the pulling unit or the platform.

Shell did not design, manufacture, own, inspect, maintain, control, operate, or have custody of the pulling unit provided by Weatherford for work on Ship Shoal

241. Instead, Weatherford was responsible for the inspection, maintenance, and operation of the pulling unit. Shell did not instruct the Weatherford crew or direct the manner or method in which Weatherford performed its work for Shell.

At the time of the accident, the plaintiff had been employed by Weatherford for about four and a half years, and he had been assigned to Pulling Unit 4 on Shell's Ship Shoal 214 platform for about two and a half months. In his deposition testimony, the plaintiff described Weatherford's pulling units as mini drilling rigs that are used to pull pipe from the ground. He stated that Weatherford's pulling units are kept in Weatherford's yard when not in use, and all of them are used in offshore operations. He further stated that, when a Weatherford pulling unit is needed for a job, a Weatherford crew is sent out to the jobsite to operate the pulling unit. He stated that only Weatherford employees are allowed to operate Weatherford's pulling units.

The plaintiff was on the Weatherford crew sent out to Ship Shoal 241 to operate Pulling Unit 4. The crew consisted of a derrick hand (the plaintiff), two floor hands, a driller, and a supervisor. In addition to the pulling unit itself, the Weatherford crewmembers brought out to the platform all of the other equipment they needed for the job, including slings, tools, and face shields. While the Weatherford crew was on the platform, they performed regular inspections of the

pulling unit, including inspections of the pipe stops on the pulling unit. During these inspections, the plaintiff did not see anything wrong with the pipe stops.

On the day of the accident, the plaintiff worked the six a.m. to six p.m. shift. Immediately before the accident, while operations were at a standstill and the crew was preparing for their next task, he had noticed that hydraulic fluid had leaked onto the rig floor. He went to get some oil pads out of a Weatherford tool box to clean it up. He testified that, after he closed the tool box, something hit his right shoulder and knocked his hard hat off. He later learned that the object that hit him was the arm of a pipe stop that had broken off from the Weatherford pulling unit. No operations were taking place at the time, and the plaintiff stated that the pipe stop was completely stationary before the arm allegedly broke off and fell, striking him.

In his deposition testimony, the plaintiff stated that his supervisor on the job was a Weatherford employee, that he received all of his instructions from either his Weatherford supervisor or the Weatherford driller, that neither he nor any other member of the Weatherford crew received any step-by-step directions from Shell, and that no one from Shell operated any of Weatherford's equipment, including but not limited to the pulling unit or the pipe stops on the pulling unit. He also testified that he did not know of anything that Shell did to cause the pipe stop to fall.

## Analysis

**A.** **The Summary Judgment Standard**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law. A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact. If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact. All facts and inferences are construed in the light most favorable to the nonmoving party.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim. The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.

## B. Louisiana Law Applies

The court has subject-matter jurisdiction over this action pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1333 *et seq.*, specifically 43 U.S.C. § 1349. State, federal, or maritime law might apply to a case before the court on OCSLA jurisdiction. In 43 U.S.C. § 1333(a)(2)(A), the OCSLA states that

> [t]o the extent that they are applicable and not inconsistent. . ., the civil and criminal laws of each adjacent State. . . are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf. . . .

Therefore,

> for adjacent state law to apply as surrogate federal law under OCSLA, three conditions are significant. (1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law.[2]

In this case, all three of those conditions are satisfied, and Louisiana law applies to the plaintiff's claims.

---

[2] *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990).

C.      **There is No Evidence that Shell had Custody of the Pulling Unit**

The plaintiff's claim against Shell is based on the fact that Weatherford's pulling unit was located on Shell's platform at the time of the accident. This is a claim for custodial liability. Under Louisiana Civil Code Article 2317, a person is liable for the damage caused by the things in his custody. Under Louisiana Civil Code Article 2317.1, the owner or custodian of a thing is responsible for the damage caused by a defect in a thing when, "in the exercise of reasonable care" he should have known about the existence of the defect, the damage could have been prevented by the exercise of reasonable care, and he failed to exercise such reasonable care. Thus, to prevail on his custodial liability claim, the plaintiff must prove that (1) the pulling unit was in Shell's custody; (2) the pulling unit contained a vice or defect that presented an unreasonable risk of harm to others; (3) the defective condition caused the plaintiff's damage; and (4) Shell knew or should have known of the defect.[3] Custody of a thing, distinct from ownership, refers to a person's supervision and control over the thing. The test for whether a defendant has custody over a thing so as to impose liability on the defendant for defects or damage caused by it is

---

[3]    *Luna v. PNK Lake Charles, L.L.C.*, No. 17-30711, 2018 WL 1709512, at *1 (5th Cir. 2018); *Cormier v. Dolgencorp, Inc.*, 136 Fed. App'x 627, 627-28 (5th Cir. 2005) (citing La. Civ. Code arts. 2317, 2317.1).

whether the defendant has a right of direction and control over the thing and what, if any, benefit the defendant derives from the thing.[4]

In this case, Shell would derive benefit from the operation of the pulling unit because the work being performed by Weatherford's crew while using the pulling unit was work for Shell. But the plaintiff presented no evidence establishing that Shell had custody or control over the pulling unit while it was located on Shell's platform.

First, it is undisputed that Weatherford owned the pulling unit. Ownership creates a presumption that a thing is in the custody of the owner,[5] and the plaintiff presented no evidence overcoming that presumption.

Second, the plaintiff's deposition testimony established that only Weatherford employees operated the pulling unit and that, in addition to Shell not operating the pulling unit, Shell did not direct the Weatherford employees when they were operating the pulling unit. Therefore, there is no evidence that Shell had any supervision or control over the pulling unit or pulling unit operations; consequently, there is no evidence that Shell had custody over the pulling unit while it was temporarily located on Shell's platform. The mere presence of the pulling unit on

---

[4] *King v. Louviere*, 543 So.2d 1327, 1329 (La.1989)); see also *Coulter v. Texaco*, 117 F.3d 909, 913 (5th Cir. 1997) (finding that the platform owner lacked custody of a drilling rig located on a fixed platform).

[5] *Coulter v. Texaco*, 117 F.3d at 913.

8

Shell's platform is insufficient – without evidence of actual supervision, direction, and control by Shell over the pulling unit operations – to establish that Shell had custody of the pulling unit and, consequently, could be liable for damage caused when the pipe stop fell off the pulling unit. The plaintiff's testimony that maintenance, inspection, and operation of the pulling unit was performed solely by Weatherford employees and not by anyone employed by Shell established that Shell did not have custody of the pulling unit while it was on Shell's platform.

Because the plaintiff failed to present evidence establishing that Shell had control over the pulling unit or pulling unit operations, the plaintiff failed to establish that Shell is liable for the plaintiff's accident and resulting injuries.

D.  **There is no Evidence that Shell was Liable for its Contractors' Negligence**

Under Louisiana law, a principal generally is not liable for the offenses an independent contractor commits in the course of performing contractual duties.[6] There are two exceptions to that general rule – the first is when the work being performed by the contractor is ultrahazardous, and the second is when the principal reserves the right to supervise or control the work being performed by the contractor.[7] In other words, a principal is not liable for the torts of an independent

---

[6]  *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 270 (5th Cir. 1992).

[7]  *Coulter v. Texaco, Inc.*, 117 F.3d at 912; *Lejeune v. Shell Oil Co.*, 950 F.2d at 270.

9

contractor unless (a) the work is ultrahazardous or (b) the principal exercises operational control over or expressly or impliedly authorizes the independent contractor's actions.[8]

It is undisputed that the plaintiff was employed by Weatherford, which was an independent contractor of Shell, and there is no allegation that any of the work being performed by Weatherford or any other Shell contractor was ultrahazardous. Therefore, in order for Shell to be liable for any negligence of Weatherford or any of its other contractors, the plaintiff must show that Shell exercised operational control over the work that those contractors performed. The deposition testimony presented by Shell in support of its motion is consistent that Shell did not exercise such control over the Weatherford crew on the Ship Shoal 241 platform, and the cited contract between Shell and Weatherford specifically indicates that Shell did not intend to do so. Therefore, assuming for the sake of argument that Weatherford or any other of Shell's contractors were negligent and this negligence led to the plaintiff's accident and injuries, the plaintiff has failed to meet his burden to show that a genuine issue of fact exists that there was a degree of control exercised by Shell over the contractor's activities such that Shell would be liable for that negligence. To the contrary, the evidence is uncontroverted that Shell had no control

---

[8] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991).

10

over the details of the work being performed by Weatherford at the time of the incident in which the plaintiff was allegedly injured, and no evidence was presented to show that the work being performed was ultrahazardous. Accordingly, no evidence was presented that supports a conclusion that Shell is liable for any alleged negligence on the part of Weatherford or any of its independent contractors.

E.     **There is No Evidence that Shell was Independently Negligent**

The plaintiff presented no evidence that would support a conclusion that Shell was independently liable for causing the incident or the plaintiff's alleged injury. To establish a negligence claim under Louisiana law, a plaintiff must prove that the defendant had a duty to conform his conduct to a specific standard, the defendant breached that duty, the defendant's substandard conduct was a cause-in-fact of the plaintiff's injures, the defendant's substandard conduct was a legal cause of the plaintiff's injuries, and the plaintiff sustained damages.[9] Under Louisiana law, whether the defendant owed a duty to the plaintiff is a question of law but whether the defendant breached a duty is a question of fact.[10]

In this case, Shell owed a duty of reasonable care to the contractors on board its platform. But there is no evidence that Shell was involved in the operation that

---

[9]     *Hanks v. Entergy Corp.*, 2006-477 (La. 12/18/06), 944 So.2d 564, 579.

[10]    *Broussard v. State ex rel. Office of State Bldgs.*, 2012-1238 (La. 04/05/13), 113 So.3d 175, 185.

11

was being conducted before the incident occurred, and there is no evidence that Shell in any way instructed or directed the Weatherford crew on maintenance, inspection, or operation of the pulling unit or the pipe stop on the pulling unit or was in any way responsible for the failure of the pipe stop and the resulting accident. There is no evidence that any Shell employee was ever involved in maintenance, inspection, or operation of the pulling unit. Thus, the plaintiff failed to meet his burden of showing that Shell somehow breached any duty that it might have owed to the Weatherford employees who were working on its platform. Similarly, the plaintiff failed to meet his burden of proving that Shell's actions or omissions caused the accident. For these reasons, the plaintiff failed to prove that Shell was negligent in any way or that its negligence led to the plaintiff's accident.

## **CONCLUSION**

The plaintiff failed to establish that there is a genuine issue of material fact concerning the alleged liability of defendants Shell Offshore, Inc. and Shell Oil Company. Therefore, these defendants are entitled to judgment as a matter of law, and the plaintiff's claims against them will be dismissed with prejudice. Accordingly,

IT IS ORDERED that the motion for summary judgment (Rec. Doc. 46) filed by Shell Offshore, Inc. and Shell Oil Company is GRANTED, and the plaintiff's

claims against Shell Offshore, Inc. and Shell Oil Company are DISMISSED WITH PREJUDICE.

Signed at Lafayette, Louisiana, this 8th day of May 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE